***********
Upon review of the competent evidence of record, with reference to the errors assigned, and finding no good grounds to receive further evidence, or to rehear the parties or their representatives, the Full Commission, upon reconsideration of the evidence, reverses the Opinion and Award of the Deputy Commissioner, and enters the following Opinion and Award.
 *********** MOTION TO TAKE MEDICAL DEPOSITIONS *Page 2 
Defendant moved, pursuant to Rule 701(6) of the North Carolina Industrial Commission Rules, to take the depositions of Dr. Bruce Vaiden Darden, II and Dr. David Marshall Peterson, and for such depositions to be considered by the Full Commission in connection with Defendant's appeal, on the grounds that the Deputy Commissioner denied Defendant the right to cross-examine and further explore the opinions rendered by Dr. Darden and Dr. Peterson in the responses to written questions submitted by them. After consideration of the written and the oral arguments of the parties, Defendant's Motion is hereby DENIED.
 PLAINTIFF'S MAY 14, 2008 FORM 18M
During the pendency of this appeal before the Full Commission, Plaintiff submitted a Form 18M, dated May 14, 2008, seeking additional medical compensation as a result of his June 26, 2005 work injury for "problems with pain, weakness, and dexterity (back.)" Defendant responded to Plaintiff's Form 18M by correspondence dated May 29, 2008. After consideration of the written and the oral arguments of the parties, Plaintiff's Form 18M is hereby DENIED.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which the parties entered into in their Pre-trial Agreement and at the hearing as:
 STIPULATIONS
1. The parties are subject to and bound by the North Carolina Workers' Compensation Act.
2. Plaintiff sustained a compensable injury by accident arising out of and in the course and in the scope of his employment with Defendant on June 26, 2005. Defendant admitted that Plaintiff sustained a low back injury. *Page 3 
3. Plaintiff contends, and Defendant denies, that Plaintiff also suffered an additional injury to his back, as well as an injury to his neck, arms, and hands. Defendant paid, without prejudice, for certain treatment to Plaintiff's neck. Defendant did not pay for any treatment of Plaintiff's hands or arms.
4. Plaintiff's average weekly wage at the time of the June 26, 2005 work injury was $451.00, yielding a compensation rate of $300.68.
5. An employment relationship existed between the parties on June 26, 2005.
6. Defendant employed three (3) or more employees on June 26, 2005.
7. Defendant was self-insured on June 26, 2005.
8. All forms and motions which Plaintiff and Defendant filed with the North Carolina Industrial Commission shall be part of the record without further authentication, as well as copies of all orders or decisions filed by the North Carolina Industrial Commission.
9. The parties stipulated to the following documents being admitted into evidence as stipulated exhibits: Stipulated Exhibit one (1) — Plaintiff's medical records, North Carolina Industrial Commission forms and filings, pleadings, discovery responses and responses to written questions submitted to Bruce Vaiden Darden, II, M.D. and David Marshall Peterson, M.D., Plaintiff's treating physicians.
 *********** ISSUES
The issues for determination are:
1. Whether Plaintiff suffered an injury by accident to his neck, his hands, or his arms on June 26, 2005?
2. Whether Plaintiff is entitled to any additional workers' compensation benefits? *Page 4 
 ***********
Based upon the competent and the credible evidence of record, as well as any reasonable inferences that may be drawn therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is 47 years old. He began his employment with Defendant on October 10, 2004 as a utility worker. Plaintiff's job duties consisted of repairing water main breaks and performing general labor. Plaintiff worked with a crew of six (6) other employees using heavy equipment and power tools, as well as operating a dump truck and back hoe.
2. On June 26, 2005, Plaintiff's crew was repairing a water main break. Plaintiff was bending over in a hole approximately six (6) feet deep repairing a water main break when a co-worker lost his grip on a section of pipe measuring four (4) feet long, and the section of pipe fell onto Plaintiff's lower back.
3. Plaintiff presented to the emergency department of Carolinas Medical Center in Charlotte, North Carolina on June 26, 2005 with complaints of severe, acute lower back pain. Radiographs revealed left transverse process fractures at the L2 and L3 levels of the spine, with no other significant abnormalities. Plaintiff received morphine and a back brace. Dr. Daniel Marshall Peterson wrote Plaintiff out of work and scheduled a follow-up visit for July 6, 2005.
4. On July 5, 2005, Mr. Michael Francis Nido, a physician's assistant, examined Plaintiff at Carolina Neurosurgery Spine Associates in Charlotte, North Carolina. Plaintiff noted that he initially had pain running down his left leg, but that it improved after taking the prescribed medication and wearing the back brace. Dr. Michael Daniel Heafner also evaluated Plaintiff at this July 5, 2005 visit. Dr. Heafner was of the opinion that Plaintiff's left transverse process fractures at the L2 and L3 levels of the spine were relatively benign, were not operative *Page 5 
in nature, and would be best served by a course of conservative treatment. Accordingly, Dr. Heafner ordered physical therapy, and a follow-up visit with him in 30 days.
5. On July 6, 2005, Dr. Peterson saw Plaintiff again, and ordered that he remain out of work and continue to wear the back brace. Dr. Peterson further noted that Plaintiff should begin decreasing the medications he was taking for pain.
6. On July 13, 2005, Dr. Peterson noted that Plaintiff was complaining of "some shooting pains in [the] left leg." Dr. Peterson continued his prescription for Percocet, and ordered that Plaintiff remain out of work.
7. By July 20, 2005, Dr. Peterson noted that Plaintiff's pain was radiating into his central back. Dr. Peterson again ordered that Plaintiff remain out of work. In addition, Dr. Peterson ordered physical therapy for Plaintiff to begin twice weekly.
8. Plaintiff's first complaints of radiating cervical pain were approximately 25 days following his June 26, 2005 work injury. On July 26, 2005, Plaintiff informed Dr. Peterson that beginning on July 20, 2005, he developed right cervical pain radiating into his right shoulder and right forearm. Dr. Peterson noted that Plaintiff had anterior cervical fusion surgery two and one half (2 ½) years earlier, performed by Dr. Bruce Vaiden Darden, II. Dr. Peterson also noted that Plaintiff began physical therapy the week that his complaints of radiating cervical pain developed. Dr. Peterson continued to keep Plaintiff out of work, and on August 9, 2005, he noted that Plaintiff was returning to Dr. Darden for his neck and right arm pain.
9. Prior to his employment with Defendant, Plaintiff had a well-documented history of problems with his cervical spine. Cervical spine magnetic resonance imaging (MRI) on December 27, 2002 revealed a disc protrusion at the C6-C7 level of the spine resulting in moderate central *Page 6 
canal stenosis and a protrusion at the C5-C6 level of the spine with mild central canal stenosis. Dr. Joseph Duncan, who was a partner of Dr. Darden, noted in a September 9, 2003 progress note that review of Plaintiff's previous cervical MRI demonstrated "a broad based disk herniation at C6-7, as well as eccentric right disc protrusion at C5/6 with mild central canal stenosis." On October 3, 2003, Dr. Darden noted that Plaintiff "has a right-sided herniation affecting his C6 nerve root at C5/6 which is causing most of his problem. He does have some mild disc bulge at C6/7, which we are going to ignore at this time." Dr. Darden performed a fusion with hardware at the C5-C6 level of Plaintiff's spine on October 9, 2003. In the months after the surgery, Plaintiff complained of neck and right arm pain, which continued sporadically until at least July 21, 2004, when Dr. Darden noted that Plaintiff was complaining of neck pain into the right peri-scapula and shoulder, with pain radiating down the arm.
10. In addition to his pre-existing cervical spine disease, Plaintiff also had a history of complaints with respect to his hands, arms, and surrounding nerves. In a February 19, 2004 Social Security Disability application, Plaintiff stated that he had "[n]erve damage and muscle incapable of normal movement (right shoulder, arm and neck.)" Nerve conduction studies performed on Plaintiff's hands, arms, and shoulders on May 30, 2007 were normal.
11. Plaintiff returned to see Dr. Darden on August 2, 2005. A cervical spine MRI on August 5, 2005 revealed a solid fusion at the C5-C6 level of the spine, with a broad-based protrusion to a shallow, herniated disc at the C6-C7 level of the spine. Significantly, this August 5, 2005 cervical spine MRI also revealed significant osteophytes at the C6-C7 level of the spine, which take months, if not years to form, and are indicative of degenerative changes, rather than acute changes.
12. Plaintiff continued to complain of increasing right arm pain radiating into the hand, with numbness and tingling in the right hand and into two (2) fingers on the left hand. *Page 7 
Following an examination on September 14, 2005, Dr. Darden recommended that Plaintiff undergo a microscopic anterior cervical discectomy and fusion at the C6-C7 level of the spine. This surgery would necessitate the removal of the plate at the C5-C6 level of the spine, which is the plate that Dr. Darden placed in the prior cervical spine surgery that Plaintiff underwent on October 9, 2003. Dr. Darden performed this cervical spine surgery October 10, 2005, at which time he noted "extensive osteophytosis at the C6-7 level" of the spine. As part of Dr. Darden's post-operative diagnosis, he diagnosed "cervical degenerative disc disease, C6-7, status post prior C5-6 ACDFP." Nowhere in the operative report did Dr. Darden reference any findings that were acute in nature.
13. Defendant admitted the compensability of Plaintiff's lower back injury, but did not accept Plaintiff's cervical spine injury as a compensable claim. Further, Defendant paid, without prejudice, for some of the treatment to Plaintiff's neck, including his October 10, 2005 cervical spine surgery. Defendant also paid Plaintiff temporary total disability compensation from June 27, 2005 through September 29, 2007, when Special Deputy Commissioner Elizabeth M. "Lacy" Maddox approved their Form 24 and suspended payment of Plaintiff's disability compensation due to his failure to comply with the August 2, 2007 Order of Executive Secretary Tracey H. Weaver.
14. Plaintiff failed to cooperate with some of the medical care offered to him, in that he missed multiple therapy and medical appointments, and attended only the initial session of the work-hardening program recommended by Dr. Darden and offered by Defendant. On August 2, 2007, Executive *Page 8 
Secretary Weaver issued an Order compelling Plaintiff to cooperate with the medical and rehabilitation services offered by Defendant. On August 24, 2007, Defendant filed a Form 24 due to Plaintiff's failure to comply with the August 2, 2007 Order of Executive Secretary Weaver. On September 25, 2007, Special Deputy Commissioner Maddox issued an Order suspending payment of Plaintiff's temporary total disability compensation due to his failure to comply with the August 2, 2007 Order of Executive Secretary Weaver.
15. The Full Commission finds, based upon the greater weight of the evidence, that there is insufficient evidence in the record tending to show that Plaintiff is now cooperating with Defendant's medical and rehabilitation efforts in order to warrant lifting the suspension of temporary total disability compensation imposed by the September 25, 2007 Order of Special Deputy Commissioner Maddox. With respect to whether Plaintiff suffered an injury to his neck, hands, and arms in connection with the June 26, 2005 work injury, the Full Commission finds that the evidence does not support such a finding. Plaintiff did not mention cervical, hand, and arm pain until approximately 25 days after his June 26, 2005 work injury.
16. Also, there are several documented instances in which Plaintiff made misrepresentations concerning the nature and circumstances of his June 26, 2005 work injury. On cross-examination at the hearing before the Deputy Commissioner, Plaintiff admitted that he told Defendant's claim representative that he had no prior history of lower back problems, and in his answers to interrogatories, Plaintiff denied that he ever had any lower back problems prior to June 26, 2005. Further, Plaintiff denied on cross-examination at the hearing before the Deputy Commissioner that he sustained a lower back work injury in 2001 while working with Carrier Corporation. However, medical and other records document that Plaintiff did, in fact, sustain a lower back work injury in 2001 while working with Carrier Corporation. Plaintiff denied that he had any complaints with respect to his cervical spine following his October 9, 2003 cervical spine surgery; however, the medical records discussed in more detail, above, clearly demonstrate otherwise. Plaintiff gave inconsistent statements regarding the weight of the pipe that fell on him *Page 9 
on June 26, 2005. On the date of the accident, Plaintiff stated that the pipe weighed about 40 pounds, whereas he testified at the hearing before the Deputy Commissioner that the pipe weighed over 100 pounds. The Full Commission finds, based upon the greater weight of the evidence, that Plaintiff's testimony and other statements regarding the nature and location of his injuries in connection with his June 26, 2005 work injury are not credible.
17. In response to written questions provided to Dr. Peterson, he offered the following opinions: (1) most fractures of the transverse process at L2 and L3 levels of the spine heal within two (2) to three (3) months after the date of injury; (2) after the healing process for transverse process fractures at the L2 and L3 levels of the spine is complete, patients are normally able to return to full activity; (3) Plaintiff, now two and one half (2 ½) years from the date of injury, "would not have any permanent partial disability related to the transverse process fractures that occurred on June 26, 2005," nor would he have any permanent work restrictions "as a result of the injuries he suffered on June 26, 2005;" (4) Plaintiff's June 26, 2005 work injury did not cause the neck complaints he reported following this work injury, nor did this work injury contribute to the need for any cervical spine surgery.
18. In Dr. Darden's responses to written questions, he offered the following opinions: (1) "[i]t is my opinion that the neck pain that [Plaintiff] suffered on approximately July 20th, 2005 was proximately caused by his accident on June 26th, 2005;" and (2) "[y]es, the accident of June 26th, 2005 did contribute to the need for cervical surgery that was performed October 20th [sic], 2005."
19. The Full Commission finds, based upon the greater weight of the evidence, that the opinion of Dr. Peterson *Page 10 
that Plaintiff's cervical spine complaints are unrelated to the June 26, 2005 work injury should be given greater weight than the opinions of Dr. Darden. Dr. Peterson treated Plaintiff immediately following his June 26, 2005 work injury, and his opinion is consistent with Plaintiff's report of how the injury occurred, as well as his complaints immediately following the work injury. The Full Commission, therefore, finds that Plaintiff's cervical spine, arm, and hand complaints that he reported as beginning in July 2005 are not causally related to his June 26, 2005 work injury.
20. The Full Commission also gives great weight to the opinions of Dr. Peterson on the extent of Plaintiff's disability. Based on the greater weight of the evidence, the Full Commission finds that Plaintiff's traverse process fractures had healed prior to the date Dr. Peterson rendered his opinion in response to written questions and Plaintiff has no permanent work restrictions or permanent partial disability resulting from his compensable injury.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury by accident to his lower back arising out of and in the course and scope of his employment with Defendant on June 26, 2005. N.C. Gen. Stat. § 97-2(6) (2007).
2. As a result of Plaintiff's June 26, 2005 work injury, he is entitled to temporary total disability compensation at the rate of $300.68 per week from June 27, 2005 through September 29, 2007, when Special Deputy Commissioner Elizabeth M. "Lacy" Maddox issued an Order suspending payment of Plaintiff's temporary total disability compensation due to his failure to comply with the August 2, 2007 Order of Executive Secretary Weaver compelling him to cooperate with the medical and rehabilitation efforts of Defendant. However, as of the date *Page 11 
Dr. Peterson responded to written questions, if not before, Plaintiff was no longer disabled from working, had no permanent partial disability and was not entitled to further indemnity compensation. N.C. Gen. Stat. §§ 97-29.
3. There is insufficient evidence in the record tending to show that Plaintiff is now cooperating with Defendant's medical and rehabilitation efforts to justify lifting the suspension of his temporary total disability compensation imposed by the September 25, 2007 Order of Special Deputy Commissioner Maddox. However, the issue is now moot as the Full Commission has found herein that Plaintiff is no longer disabled. N.C. Gen. Stat. §§ 97-25; 97-29 (2007).
4. The greater weight of the evidence of record establishes that Plaintiff's cervical spine, arm, and hand complaints beginning in July 2005 and continuing are not causally related to his June 26, 2005 work injury. Holley v. ACTS, Inc., 357 N.C. 228, 581 S.E.2d 750 (2003).
5. Plaintiff is not entitled to payment of medical expenses incurred as a result of treatment for his cervical spine, arm, and hand complaints beginning in July 2005. N.C. Gen. Stat. §§ 97-2(19); 97-25
(2007).
6. Plaintiff is entitled to have Defendant pay for medical expenses incurred, which were reasonably related to his lower back injury, as such medical treatment was reasonably required to effect a cure, to give relief, and/or to lessen his period of disability. N.C. Gen. Stat. §§ 97-2(19), 97-25 (2007).
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission makes the following:
 AWARD *Page 12 
1. Plaintiff's claim for additional indemnity compensation is DENIED.
2. Plaintiff's claim for payment of medical expenses related to his cervical spine, arm, and hand complaints beginning in July 2005 is DENIED.
3. Defendant shall pay for all medical expenses incurred by Plaintiff due to his June 26, 2005 lower back injury, including reimbursement to Plaintiff for out-of-pocket expenses, if any.
4. Each side shall pay its own costs.
This the ___ day of December 2008.
 S/___________________
 BERNADINE S. BALLANCE
 COMMISSIONER
CONCURRING:
 S/___________________ DIANNE C. SELLERS COMMISSIONER
 S/___________________ BUCK LATTIMORE COMMISSIONER *Page 1